IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TERRY MICHAEL KIGHTLINGER,    )
       Petitioner,    )    Civil Action No. 06-187 Erie
                                    )
    v.                          )
                                    )    District Judge Cohill
HARRY E. WILSON, et al.,    )    Chief Magistrate Judge Baxter
       Respondents.    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner, Terry Michael Kightlinger, is a state prisoner presently incarcerated at the State Correctional Institution, Fayette, located in LaBelle, Pennsylvania. On December 3, 1998, a jury empaneled by the Court of Common Pleas of Venango County convicted him of second-degree (felony) murder, attempted murder, aggravated assault, robbery, and criminal conspiracy. The Honorable H. William White presided over Petitioner's trial and sentenced him to life imprisonment plus 48 to 120 months. Robert Varsek, Esquire, represented Petitioner at trial and on direct appeal.

Petitioner has filed with this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. # 1). He raises the following claims:

(1)    Judge White abused the discretion afforded to him under Pennsylvania Rule of Criminal Procedure 1127, which provided that a court may consolidate for trial separate criminal informations if certain conditions are met;

(2)    Judge White erred in permitting the Commonwealth to rehabilitate its witness, David Pennewell, in violation of Rule 613 of the Pennsylvania Rules of Evidence;

(3)    The prosecutor committed misconduct by improperly vouching for

1

witnesses and Judge White erred in denying Petitioner's motion for mistrial;

(4) Attorney Varsek provided ineffective assistance for failing to:

    (a) seek suppression of the audio recording of a 911 call and for deciding not to appeal Judge White's decision to permit the audio recording to be played to the jury;

    (b) file a motion to suppress statements he made to law enforcement officials that he claims were obtained in violation of his constitutional rights; and

    (c) call Richard Wheeler, Kimberly May, and Megan Slater as witnesses for the defense.

### A.     **Relevant Factual and Procedural History**

At trial, the Commonwealth presented evidence from which the jury could have concluded the following facts. On March 3, 1998, Petitioner and three other individuals – Walt May, David Pennewell, and Charles Vondenbenken – went on a crime spree. (See 11/18/1998 Trial Tr. at 17-18). They first decided to rob Michele Elkins, who lived in Oil City. (Id.) Petitioner and Pennewell went to Petitioner's home and retrieved dark clothing, nylon stockings, two guns, and ammunition. (11/19/1998 Trial Tr. at 86-87, 152-55).

Petitioner and his co-conspirators drove to Oil City, and he and May armed themselves with guns, covered their faces with the nylon stockings, and entered the Elkins residence. (11/18/1998 Trial Tr. at 21-27, 173). Petitioner placed a gun in Elkins's face and demanded marijuana and all of her money. (11/16/1998 Trial Tr. at 164, 181; 11/18/1998 Trial Tr. at 23). Elkins complied and gave Petitioner a tin can that contained a small amount of marijuana and all of the cash she had nearby. (Id. at 164-65).

After they robbed Elkins, the group decided to drive to Titusville to continue their crime spree. (11/18/1998 Trial Tr. at 28-29). Vondenbenken opted out of further participation and left the group. As Petitioner, May, and Pennewell were driving, they decided to rob a gas station that they had passed in Pleasantville. (Id. at 33-35). When they saw that the station had security cameras inside, they opted instead to rob a nearby residence. They pulled up to the home of Frank and Ardelle Matkovich shortly after 11:00 p.m. (11/17/1998 Trial Tr. at 127). Petitioner

2

and May each were armed with a gun, and Pennewell was armed with a baseball bat. (11/18/1998 Trial Tr. at 39-40). Pennewell struck the front door with the bat and headed to the rear of the residence. (Id. at 41-42). Petitioner and May stood outside the Matkovich home with their weapons drawn. (Id.)

Frank Matkovich responded to the pounding on his front door, realized there were two gunmen outside, and hurriedly closed the door. May fired one shot through a window in the door, striking Frank Matkovich in the neck. (11/17/1998 Trial Tr. at 172-73). Aredelle Matkovich, hearing the gunshot, left the bedroom to aid her husband. She saw two people standing outside her front door. (Id. at 130). May fired a second shot through the window, striking her in the wrist and shattering her bones. (Id. at 126, 132, 173-74). Frank Matkovich never regained consciousness and he died of the gunshot wound 10 days later. (Id. at 195).

Petitioner, May, and Pennewell fled the crime scene, discarded their nylon stockings and weapons and returned to Petitioner's residence. (11/18/1998 Trial Tr. at 44-48). There, they concocted alibis. (Id. at 51, 70; 11/19/1998 Trial Tr. at 128-29). Petitioner and the others were subsequently interviewed as part of the criminal investigation into the crimes that occurred the night of March 3, 1998. Initially, they used the alibis that they had concocted, but they later made several admissions including admitting to fabricating their alibis. On March 10, 1998, Petitioner admitted his involvement in the crimes during an interview with the police. (11/18/1998 Trial Tr. at 233-39).

The Commonwealth charged Petitioner with: the robbery of Michele Elkins; the felony murder and robbery of Frank Matkovich; the attempted murder and aggravated assault of Ardelle Matkovich; and, criminal conspiracy. The Commonwealth sought consolidation of all of the offenses at trial, which Judge White granted.

Petitioner testified in his own defense at trial. (11/19/1998 Trial Tr. at 74-248). He admitted to robbing Michele Elkins. (Id. at 94-100). He also admitted that he exited the car with May and Pennewell at the Matkovich residence. He claimed he was arguing with May about stopping at the home, but acknowledged that he ultimately ended up near or on the front porch of the home with May. He disavowed participating in a plan to rob the Matkoviches and said that

3

he was walking away from the home when May fired the first shot at Frank Matkovich. (Id. at 112-23).

The jury did not credit Petitioner's defense. It convicted him on all counts and Judge White sentenced him to a life sentence plus 48 to 120 months. Attorney Varsek filed a direct appeal on Petitioner's behalf. On appeal Petitioner argued, as he does in the instant petition, that: (1) Judge White abused his discretion in granting the Commonwealth's motion to consolidate for trial the charge of the robbery of Elkins and the charges regarding the Matkoviches; (2) Judge White erred in permitting the Commonwealth to rehabilitate its witness, David Pennewell, through the introduction of a prior statement, purportedly in violation of Rule 613 of the Pennsylvania Rules of Evidence; and, (3) the prosecuting attorney, District Attorney Robert Grossi, improperly vouched for Commonwealth witnesses and Judge White should have granted the defense motion for a mistrial.

On April 6, 1999, Judge White issued an opinion addressing all of Petitioner's claims on the merits pursuant to Pennsylvania Rule of Appellate Procedure 1925(a). (Doc. # 1, Part 1 at 21-31). On September 13, 2000, the Superior Court of Pennsylvania issued a decision affirming Petitioner's judgment of sentence. (Doc. # 1, Part 1 at 33-44). The Supreme Court of Pennsylvania denied the petition for allowance of appeal on February 5, 2001.

On December 14, 2001, Petitioner filed a *pro se* petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. Judge White appointed Schellart Los, Esquire, to represent him. Attorney Los filed an amended petition which raised numerous claims that Attorney Varsek provided Petitioner with ineffective assistance, including the three claims raised in the instant petition at Claim 4(a) through 4(c). Judge White presided over an evidentiary hearing on July 1, 2003. On December 29, 2003, he issued an opinion denying the amended PCRA petition on the merits. (Doc. #1, Part 1 at 46-55 and Part 2 at 1-8).

Petitioner appealed. Attorney Los filed a petition to withdraw with the Superior Court in which he contended that none of the claims that Petitioner raised on appeal had merit. On January 11, 2006, the Superior Court issued a Memorandum Opinion granting counsel's request

to withdraw and affirming Judge White's decision to deny PCRA relief. (Doc. #1, Part 2 at 10-27). On August 2, 2006, the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal. Petitioner then commenced habeas proceedings in this Court.

### B. Discussion

#### (1) Standard of Review

In conducting habeas review for a state prisoner such as Petitioner, we are limited to deciding whether his judgment of sentence violated the Constitution. 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Review of Petitioner's federal constitutional claims are governed by the federal habeas statute applicable to state prisoners, 28 U.S.C.§ 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to,[1] or involved an unreasonable application of,[2] clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.§ 2254(d)(1) & (2). See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). Hackett v. Price, 381 F.3d 281, 287 (3d

---

[1] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams, 529 U.S. at 405-06).

[2] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert, 387 F.3d at 324.

5

Cir. 2004); Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).

### (2) State Law Claims

Petitioner's first two claims are allegations of state law error that are not cognizable in federal habeas corpus. Estelle, 502 U.S. at 67-68 (federal courts may not "reexamine state court determination on state-law questions"); Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997) ("[W]e have stated that 'it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." (quoting Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir.1992)); Wells v. Pestock, 941 F.2d 253, 256 (3d Cir. 1991) ("Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.")

In Claim 1, Petitioner contends that Judge White abused the discretion afforded to him under Pennsylvania Rule of Criminal Procedure 1127[3] when he granted the Commonwealth's request to try Petitioner for the crimes against the Matkoviches and the robbery of Michele Elkins in the same proceeding. That rule provided that separate criminal informations could be tried together if: (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so there is no danger of confusion; or (b) the offenses charged were based on the same act or transaction. Pa.R.Crim.P. 1127(a)(1). In reviewing this claim on direct appeal, the Superior Court determined that the Elkins robbery and the offenses against the Matkoviches were part of the same March 3, 1998 crime spree. It also determined that evidence of each incident would have been admissible in a separate trial for the other incident under Rule 404(b)(2) of the Pennsylvania Rules of Evidence, entitled Other

---

[3] On March 1, 2000, Criminal Procedure Rule 1127 was renumbered 582 and amended.

crimes, wrongs, or acts. Therefore, the Superior Court held, Judge White did not abuse his discretion in allowing consolidation under Criminal Rule 1127. (See Doc. # 1, Part 1 at 25-16; Part 2 at 36-40).

In Claim 2, Petitioner alleges that Judge White erred in allowing the Commonwealth to rehabilitate its witness, David Pennewell, by introducing a statement that he had given to the police that was consistent with the testimony the prosecution was proffering at trial.[4] (See 11/19/1998 Trial Tr. at 21-27). In reviewing this claim, the Superior Court noted that Rule 613(c) of the Pennsylvania Rules of Evidence "allows admission of a prior consistent statement for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness and the statement is offered to rebut an express or implied charge of" fabrication, bias, or motive. (Doc. # 1, Part 1 at 40-41). It then observed that on cross-examination the defense attempted to discredit Pennewell's testimony as biased and corrupt; therefore, the Commonwealth's introduction of Pennewell's prior consistent statement was proper under Rule of Evidence 613(c). (Id. at 40-42).

The Superior Court's decisions regarding Pennsylvania Criminal Procedure Rule 1127, and Pennsylvania Rules of Evidence 404(b)(2) and 613(c), concern purely state law issues that are not reviewable by a federal habeas court. See e.g., Estelle, 502 U.S. at 67-68. Petitioner's constitutional rights were not implicated by consolidation[5] or by the admission of Pennewell's

---

[4] Pennewell gave two tape-recorded statements to the police during the criminal investigation. (11/18/1998 Trial Tr. at 127-32). Both statements were provided on March 10, 1998. Attorney Varsek used Pennewell's first tape-recorded statement as a prior inconsistent statement during cross-examination of Pennewell. (Id.) The defense attempted to portray Pennewell as being angry with Petitioner and that he was motivated to testify against him to obtain leniency in his upcoming prosecution for his involvement in the March 3, 1998 crime spree. The Commonwealth attempted to rehabilitate Pennewell by reading to the jury the transcript of the second statement that he gave to the police, which was more consistent with his trial testimony.

[5] In Ashe v. United States, 270 U.S. 424 (1926), the United States Supreme Court held that a Pennsylvania state court's consolidation of two indictments for trial at one time was not a violation of any federal constitutional right. It held that consolidation of indictments for trial is part of the state's administration of criminal law and the decision to consolidate is not subject to federal habeas attack. Ashe, 270 U.S. at 425-26. The only attack that could be made upon a state court's consolidation decision was whether the state had the "constitutional power" to present two indictments in one trial. Id. at 425. The Court answered that question affirmatively while repeating that "there was not a shadow of a ground for interference with this sentence by habeas corpus." Id. at 426. See also Toussaint v.

(continued...)

prior consistent statement. He argues that Judge White's decision to permit consolidation and the evidentiary rulings at issue deprived him of a fair trial, but he cannot repackage a state law claim into a federal due process claim simply by stating that he was denied a fair trial based upon a ruling of state law. See Johnson, 117 F.3d at 109-10.

### (3) Prosecutorial Misconduct

In Claim 3, Petitioner asserts that District Attorney Robert Grossi committed misconduct and deprived him of a fair trial when he vouched for the credibility of David Pennewell and another Commonwealth witness, Charles Vondenbenken, during closing argument. (See 11/19/1998 Trial Tr. at 30-34). Attorney Varsek objected and requested a mistrial. (Id. at 34). Judge White denied the request. He noted that he was "not sure" District Attorney Grossi stated anything improper, but indicated that he nevertheless would give a curative instruction. (Id. at 34-36). He then instructed the jury:

> The objection I received is that the District Attorney was, at times, injecting his personal opinion into summation. I would say to you that the personal opinion of the attorneys is immaterial in the case and it's unethical for a lawyer to inject his personal opinion into the case in front of the jury.
> I'm not saying he did that. I'm just saying that that may or may not be the case, but it's a fine line between advocacy and stating your position, stating your logic and stating an opinion, so you have to – lawyers have to drawn that fine line. So, obviously, he's permitted to express his position, and, of course, he's required to point out to you – if, in fact that's his perception – where there are weakness in the defense theory and defense case. If that's his opinion, he [is] supposed to.
> But, nevertheless, if you construe Mr. Grossi as having expressed his opinion, that would be wrong. Theoretically, as I told you during selection, these lawyers could change positions and advocate the position equally well. They are to advocate the positions of their clients, not to express their point of view. He is to point out the flaws in the defense theory or the defense testimony.

(11/19/1998 Trial Tr. at 35-36).

The United States Court of Appeals for the Third Circuit has instructed that in order to find improper vouching, two criteria must be met: (1) the prosecution must assure the jury that the testimony of a Government witness is credible, and (2) this assurance must be based on either

---

[5](...continued)
Klem, 2004 WL 727061 (E.D. Pa. Mar. 31, 2004).

8

the prosecutor's personal knowledge or other information that is not before the jury. Lam v. Kelchner, 304 F.3d 256, 271 (3d Cir. 2002). It further held that: "On habeas review, however, prosecutorial misconduct such as vouching does not rise to the level of a federal due process violation unless it affects fundamental fairness of the trial. Thus, habeas relief is not available simply because the prosecutor's remarks were undesirable or even universally condemned. The relevant question for a habeas court is whether those remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Id. (quoting Darden v. Wainwright, 477 U.S. 168, 180-81 (1986); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

In denying this claim on direct appeal, the Superior Court held that District Attorney Grossi's statements were not improper. (Doc. # 1, Part 1 at 43). It also held that Judge White's instruction remedied any harm that possibly could have occurred. (Id. at 43 n.3). The Superior Court's decision was not "contrary to" or an "unreasonable application of" clearly established federal law, nor was it an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) & (2). Judge White's instruction cured any harm that might have resulted from District Attorney Grossi's comments. Thus, there was no basis for Judge White to grant a mistrial, and Petitioner cannot demonstrate that his trial was fundamentally unfair based upon the incident in question.

### (4) Ineffective Assistance of Counsel Claims

In Claims 4(a) through 4(c), Petitioner contends that Attorney Varsek provided him with ineffective assistance of counsel. The "clearly established Federal law" for AEDPA purposes in which to analyze Petitioner's claims of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. See also Wiggins v. Smith, 539 U.S. 510 (2003).

The Superior Court of Pennsylvania adjudicated each of Petitioner's ineffective assistance of counsel claims on the merits. (See Doc. # 1, Part 2 at 10-27). It applied the correct legal standard to the claims (see Doc. # 1, Part 2 at 12 n.5), and that is sufficient to satisfy review

9

under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406; Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004), rev'd on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005).[6]

The dispositive question, then, is whether the Superior Court's adjudication of any of Petitioner's ineffective assistance of counsel claims was an "unreasonable application" of Strickland. In making this determination, "we are not authorized to grant habeas corpus relief simply because we disagree with the state court's decision or because we would have reached a different result if left to our own devices." Werts, 228 F.3d at 197. Instead, "the state court's application of [Strickland] must have been objectively unreasonable," meaning, the "outcome … cannot reasonably be justified under existing Supreme Court precedent." Hackett, 381 F.3d at 287. For the reasons set forth below, Petitioner has failed to establish that the Superior Court's adjudication of any of his ineffective assistance of counsel claims was objectively unreasonable.

**(a)** **The 911 Tape**

Petitioner's first claim of ineffective assistance centers upon the 911 call Ardelle Matkovich made after Walt May shot her husband. During the 911 call, Mrs. Matkovich referred to the attackers in the plural, thereby buttressing the Commonwealth's assertion that Petitioner played an active role in the crimes and that he had not retreated from the scene, as he contended.

At trial, the Commonwealth sought to play portions of the audio recording of the 911 call. (11/17/1998 Trial Tr. at 227-31). Attorney Varsek moved to exclude the 911 audio recording on the basis that it was inflammatory and that its probative value would be outweighed by its prejudicial effect. (Id. at 220-23). Judge White recessed to listen to the tape. When he reconvened, he ruled that it was admissible. (Id. at 224). He concluded: "it does not seem to be inflammatory. It is supportive to the extent it's an issue who is at the door. She keeps using the pronoun they.… it is clearly in evidence that she perceived two people at the door. Certainly more than one.… It's compelling evidence. It's an excited utterance and certainly it's emphatic

---

[6] Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. Rompilla, 355 F.3d at 248-49; see also Werts, 228 F.3d at 202-03.

and it's going to go across the jury much more emphatically than reading from the transcript. So it's relevant and material and I don't view it as – personally to me it's not inflammatory. I really don't see it that way." (Id. at 224-26).

In his habeas petition, Petitioner challenges Attorney Varsek's decision not to seek suppression of the 911 audio recording on the basis that only a transcript of the audio tape, and not the recording itself, had been disclosed during discovery. In rejecting this claim during the PCRA proceeding, Judge White held that although the Commonwealth should have disclosed the actual audio tape during discovery, the defense was not prejudiced. (See Doc. # 1, Part 1 at 50-51). Because the Commonwealth had disclosed the transcript of the 911 audio recording, the defense was aware of what Ardelle Matkovich said during the phone call. Judge White further observed that Attorney Varsek diligently sought suppression of the audio recording on the basis that it was inflammatory and that "[g]iven [counsel's] diligence in acting in the defendant's best interests by objecting, we are not compelled that counsel was ineffective for failing to object on such a narrow ground as the Commonwealth's failure to provide an audio copy of the tape rather than just a transcript during discovery." (Id. at 51).

Petitioner also asserts that Attorney Varsek should have challenged on direct appeal Judge White's evidentiary ruling permitting the admission of the 911 audio recording. In rejecting this claim, the Superior Court determined that Judge White's evidentiary ruling regarding the 911 tape was sound and a challenge to it on direct appeal would not have been successful. (Doc. # 1, Part 2 at 13-14).

The Superior Court's and Judge White's rejection of these claims satisfies AEDPA's standard of review. Petitioner has not demonstrated that the audio recording of the 911 tape would have been suppressed had counsel challenged its admission on the basis that only the transcript of the tape had been provided to the defense pre-trial. And, the Superior Court's holding that the audio recording was admissible under the Pennsylvania Rules of Evidence is not reviewable by this Court. See e.g., Estelle, 502 U.S. at 67-68; Priester v. Vaughn, 382 F.3d 394, 401-02 (3d Cir. 2004) (habeas petitioner was not entitled to relief on ineffective assistance of counsel claim predicated on counsel's failure to object to jury instruction, as habeas court was

11

bound by state court's determination that instruction comported with state law, such that counsel's performance could not have been constitutionally deficient). Attorney Varsek cannot be found ineffective for failing to raise an appellate claim having no merit. See, e.g., Parrish v. Fulcomer, 150 F.3d 326, 328-29 (3d Cir. 1998).

### (b) Petitioner's Statement to Police

At trial, the Commonwealth admitted inculpatory statements that Petitioner made to the police on March 10, 1998. (See 11/18/1998 Trial Tr. at 233-51). He now claims that the statements were obtained in violation of his Fifth Amendment rights as explained in Miranda v. Arizona, 384 U.S. 436 (1966).[7] He specifically asserts that "[u]pon arrest [he] asked for an attorney and was told he didn't need one. Then [he] was held in custodial interrogation for several hours, threatened, and was subject to good cop/bad cop techniques until he agree to give a statement." (Doc. # 1 at 14). He contends that Attorney Varsek provided him with ineffective assistance for failing to move for the suppression of his statement.

Petitioner has failed to provide any support for his allegations, despite having the opportunity to do so during the PCRA proceeding. In rejecting this claim, the Superior Court observed that "Petitioner himself agreed [that] 'the record is not properly developed on this claim.'" (Doc. # 1, Part 2 at 14). Further, the Commonwealth submitted evidence which refuted it. Judge White explained:

> The defendant's statements to police on March 10, 1998 were clearly admissible. Commonwealth's Exhibit 2 is a Rights Warning and Waiver given to the defendant by the Pennsylvania State Police, which he signed indicating that he understood his rights and was willing to proceed without an attorney. He also

---

[7] The Supreme Court of the United States has explained:

[T]o reduce the risk of a coerced confession and to implement the Self-Incrimination Clause . . . this Court in Miranda concluded that the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored. Miranda conditioned the admissibility at trial of any custodial confession on warning a suspect of his rights: failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained.

Missouri v. Seibert, 542 U.S. 600, 608-09 (2004) (internal citations and quotations omitted).

12

stated on the record during that interview that he was advised of his rights and that he signed a Rights Waiver Form earlier that evening. He further stated that he was willing to continue to talk to the officers without an attorney present. Hence, we do not believe that counsel was ineffective for failure to attempt to suppress these statements, as he would have been pursuing a lost cause.

(Doc. # 1, Part 1 at 49).

Thus, Judge White determined that Petitioner voluntarily waived his Miranda rights and Petitioner has not demonstrated that this was "an unreasonable determination of the facts in light of the evidence presented" during state court proceedings. 28 U.S.C. § 2254(d)(2). He also has not demonstrated that the Superior Court's rejection of this claim was an "unreasonable application of" Strickland. Id. § 2254(d)(1).[8]

### (c) Failure to Call Witnesses

Finally, Petitioner argues that Attorney Varsek was ineffective for failing to call three witnesses for the defense. First, he contends that counsel should have called Richard Wheeler, who testified at the PCRA hearing that he would have been willing to testify at trial that the guns used in the March 3, 1998 crime spree belonged to Walt May. Judge White credited Wheeler's PCRA testimony, but held that it did not advance Petitioner's cause. (Doc. # 1, Part 2 at 1-2). He explained:

> [O]n cross-examination [Wheeler] stated that he last saw the guns in the defendant's home where he lived with his mother. Also, according to Commonwealth's Exhibit 1, in an interview with Lt. Gerland B. Sayers of the Oil City Police Department, Mr. Wheeler stated that he had found two guns in a room across the hall from the defendant's mother's bedroom. Mr. Wheeler further stated that the defendant offered to sell him the guns, but the defendant also did tell Mr. Wheeler that the guns belong to Walt May. Petitioner claims that [Wheeler's] testimony would be offered to rebut the Commonwealth's testimony that the guns belonged to the defendant. First, *Mr. Wheeler's testimony would place the guns in the defendant's possession, regardless of ownership*, and second, Mr. Wheeler's

---

[8] During the PCRA proceeding, Petitioner also claimed that his statements should not have been admitted because he was not arraigned within six hours of his arrest. In Commonwealth v. Davenport, 370 A.2d 301 (Pa. 1977) and Commonwealth v. Duncan, 525 A.2d 1177 (Pa. 1987), the Pennsylvania Supreme Court held that when an accused is not arraigned within six hours of arrest, any statements obtained after arrest but before arraignment are inadmissible at trial. It abrogated this "six-hour rule" in Commonwealth v. Perez, 845 A.2d 779, 786-88 (Pa. 2004). In rejecting this claim, the Superior Court determined that six hours had not passed from arrest to arraignment. (Doc. # 1, Part 2 at 14-15). The rule announced in Davenport and Duncan articulated a "state procedural rule [that] cannot form a basis for habeas relief in a federal court." Mercado v. Vaughn, 36 Fed.Appx. 684, 687 (3d Cir. 2002) (rejecting a claim asserting a violation of Pennsylvania's six-hour rule).

13

>           assertion that the guns did not belong to the defendant was based on the
>           defendant's own words. We believe that trial counsel was not ineffective for his
>           failure to call this witness.

(Id. (emphasis added)).

Second, Petitioner claims that Attorney Varsek should have called Kimberly May, "who could have testified to hearing Mr. May make several threats against the victims [sic] family." (Doc. # 1 at 15). He does not specify which victim's family May allegedly threatened. Judge White disposed of this claim as follows:

>           According to [Attorney Varsek's PCRA hearing testimony], Kim May (Petzer)
>           was subpoenaed to testify, but she, along with Walt May, were very hostile toward
>           him. Kim May testified [at the PCRA hearing] that indeed they were hostile
>           toward trial counsel, and she also testified that she made it clear that she would
>           not testify. Hence, we conclude that Kim May was not prepared to testify for the
>           defendant, and trial counsel's failure to call her as a witness was not a result of
>           ineffectiveness.

(Doc. # 1, Part 1 at 55 and Part 2 at 1).

The third witness that Petitioner claims Attorney Varsek should have called is Megan Slater. Her friend, 16-year-old Melissa Schweikert, testified at trial as a Commonwealth witness. Schweikert was frequently at Slater's home, and would sometimes speak with Petitioner on the phone when he would call Slater from jail. At trial, Schweikert testified that during one phone conversation, Petitioner had made inculpatory statements to her regarding the March 3, 1998 crime spree. (11/18/1998 Trial Tr. at 280-88). Judge White found this claim to have no merit, for the following reasons:

>           Melissa Schweikert testified at trial that she had conversations with the defendant
>           while he was in jail awaiting trial. During one conversation the defendant
>           admitted to being at the scene of the crime possessing a gun. At the PCRA
>           hearing, [Attorney Varsek] stated that he decided not to call Megan as a witness.
>           She was thirteen or fourteen years old at the time and a close friend of the
>           defendant. Trial counsel believed that, as a close friend, she would have difficulty
>           on cross-examination. Further, her testimony may not have been valuable.
>           Despite stating that she knew of all of Melissa's conversations with the petitioner,
>           at the PCRA hearing, Megan said that she would not have been with Melissa the
>           whole time she lived with her. Hence, we could infer from this testimony that
>           Melissa may have had a conversation with the petitioner to which Megan was not
>           privy. We find that the failure to call this witness was not so prejudicial as to
>           deprive the defendant of a fair trial.

(Doc. # 1, Part 2 at 2-3).

The Superior Court affirmed Judge White's denial of all of Petitioner's claims that

Attorney Varsek should have called additional defense witnesses. (Doc. # 1, Part 2 at 18-19). Petitioner has not demonstrated that its decision was an "unreasonable application of" Strickland or resulted in a decision that was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the state court noted, it cannot be said that there is a reasonable probability that Wheeler's testimony would have changed the outcome of Petitioner's trial. As for Kimberly May and Megan Slater, Attorney Varsek considered calling both of them as defense witnesses and decided not to after a consideration of the circumstances. He articulated objectively reasonable bases for not calling either of them as defense witnesses, and his decisions regarding each are precisely the type of decisions that should not be second guessed by a habeas court. See e.g., Philson v. Barbo, 77 Fed.Appx. 123, 127 (3d Cir. 2003); LaFrank v. Rowley, 340 F.3d 685 (8th Cir. 2003); Castillo v. Matesanz, 348 F.3d 1, 15 (1st Cir. 2003).

### C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Applying this standard here, jurists of reason would not find it debatable whether Petitioner's claims were without merit. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

Susan Paradise Baxter  
SUSAN PARADISE BAXTER  
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: January 7, 2008